UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 05-306

KATHY MILLER,                                                                           PLAINTIFF

v.                                    **OPINION AND ORDER**

ALLTEL KENTUCKY, INC.,                                        DEFENDANT

\* \* \* \* \* \* \* \* \*

This matter is before the Court on the Motion for Judgment as a Matter of Law made by the Defendant, Alltel Kentucky, Inc. ("Alltel"). For the following reasons, the Court will GRANT the motion.

**I.    FACTS**.

The Plaintiff, Kathy Miller ("Miller") was employed as a facilities technician for Alltel's facilities department located in London, Kentucky. Miller worked for Alltel or its predecessors-in-ownership for 29 years. Miller's husband, Danny Miller, was also employed by Alltel but worked in a different department and different location than the Plaintiff. Danny Miller's supervisor was Rick Barker. Some time prior to October 1, 2003, Miller complained to Alltel Human Resources Manager Karen Venis about certain comments Barker made about Miller that she considered to be sexually harassing. Per Venis's instructions, Miller sent a written complaint dated October 1, 2003 to the Human Resources Department. After an investigation, Alltel gave Barker a written warning for his comments.

In April 2004, another employee in the Alltel facilities department at London, Misty Rambo, complained to Venis that a co-worker, Donna Cornelius, had features such

as caller identification and call-waiting on her personal phone for which she was not paying. Miller testified that she also had free features on her own personal account. After Miller learned of Rambo's complaint, Miller accessed her personal account and removed the features.

After Rambo's complaint, Alltel conducted an audit of various employees' telephone records and discovered that Miller had accessed her personal account and removed the free features. Alltel terminated Miller by letter dated April 19, 2004, stating "[d]uring a recent audit, it has become apparent that you have accessed and altered your home telephone records as well as accessed the phone records of co-workers. Based on the severity of these actions, we have no other alternative but to terminate your employment effective today. . . ."

On June 3, 2005, Miller filed this Complaint asserting claims under 42 U.S.C. § 2000e, *et seq.* ("Title VII"). Miller asserted that sexual discrimination at Alltel created a hostile or abusive work environment and that Alltel fired her in retaliation for her sexual harassment claim against Baker. By Opinion and Order dated August 24, 2006, this Court dismissed Miller's sexual harassment claim, finding that it was time barred. The Court denied Alltel's Motion for Summary Judgment as to Miller's retaliation claim and conducted a trial of the claim. At the close of all evidence, Alltel orally moved for Judgment as a Matter of Law. The Court took the motion under advisement and, the following day, granted the motion from the bench stating that a written opinion would be forthcoming.

## II.   ANALYSIS.

### A.   Standard on Motion for Judgment as a Matter of Law.

Rule 50 of the Federal Rules of Civil Procedure provides:

> If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

Fed. R. Civ. P. 50(a)(1).

On a motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(a), the Court must view the evidence in the light most favorable to the nonmoving party, giving that party the benefit of all reasonable inferences. *Jackson v. Quanex Corp.,* 191 F.3d 647, 657 (6th Cir.1999). A district court may not weigh the evidence or make credibility determinations because these are functions for the jury. *Id.* If the nonmovant presents sufficient evidence to raise a material issue of fact for the jury then dismissal is improper under Rule 50(a). *Id.*

### B.   Retaliation under 42 U.S.C. § 2000e-3.

Title VII's antiretaliation provisions are found at 42 U.S.C. § 2000e-3 which makes it unlawful for an "employer to discriminate against any of his employees. . . .because he has opposed any practice made an unlawful employment practice" by Title VII "or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under" Title VII. 42 U.S.C. § 2000e-3(a).

#### 1)   Prima Facie Case of Retaliation.

Title VII retaliation claims are analyzed under the *McDonnell Douglas* evidentiary

3

framework. *DiCarlo v. Potter*, 358 F.3d 408, 414-15, 420 (6th Cir. 2003). Under *McDonnell Douglas*, in the absence of direct evidence of discrimination, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). To establish a prima facie case of retaliation, the plaintiff must show: 1) that he engaged in activity protected by Title VII; 2) that he was the subject of an adverse employment action; and 3) that there exists a causal link between his protected activity and the adverse action of his employer. *Equal Employment Opportunity Commission v. Ohio Edison Co.*, 7 F.3d 541, 543 (6th Cir. 1993).

Establishment of the prima facie case creates a presumption that the employer retaliated against the employee. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981). Once a plaintiff proves her prima facie case, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action. *McDonell Douglas*, 411 U.S. at 802-03. .

If the defendant meets its burden, the burden shifts back to the plaintiff to show that the reason proffered by the defendant was not its true reason but merely a pretext for discrimination. *Id.* at 804-05. A plaintiff can show pretext "either directly by persuading the [trier of fact] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256.

Alltel did not dispute that when Miller filed her complaint about Rick Barker, she engaged in activity protected by Title VII. Nor does Alltel dispute that Miller's subsequent termination was an adverse employment action. As to the third prong of the prima facie

case, to establish the causation connection, the Sixth Circuit has stated that the burden is "not onerous" and is, indeed, "a burden easily met.*" Nguyen v. City of Cleveland*, 229 F.3d 559, 565 (6th Cir. 2000)(quoting *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997)). To establish the causal link, a plaintiff is required to "proffer evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action." *Id*. at 565-66.

"[A]t the prima facie stage the burden is minimal, requiring the plaintiff to put forth some evidence to deduce a causal connection between the retaliatory action and the protected activity and requiring the court the draw reasonable inferences from that evidence, providing it is credible." *Id*. at 566. A causal link can be shown "through knowledge coupled with a closeness in time that creates an inference of causation. . . However, temporal proximity alone will not support an inference of retaliatory discrimination when there is no other compelling evidence." *Id*. "Although no one factor is dispositive in establishing a causal connection, evidence that defendant treated the plaintiff differently from similarly situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation." *Id*. at 563.

Miller presented evidence that she was terminated within approximately six months of making her written complaint. (Plaintiff's Ex. 7 & 18). She also presented evidence that, prior to her sexual harassment complaint, she had been employed by Alltel or Alltel's predecessors for 29 years – essentially all of her adult life – without any disciplinary issues. Miller also presented evidence that Karen Venis, the Alltel Human Resources employee to whom Miller made the sexual harassment complaint, was also the person that

terminated Miller's employment by letter. (Plaintiff's Ex. 18). The Court will assume without deciding that this is sufficient evidence of causation to establish a prima facie case of retaliation.

### 2) Alltel's Legitimate Non-discriminatory Reason

Alltel, however, articulated a legitimate non-discriminatory reason for Miller's termination from employment. The evidence showed that no employee was fired from Alltel for simply having free features. Karen Venis testified that, during Alltel's investigation of whether employees had free features on their phones, Donna Cornelius informed her that many employees had free features on their phones and that these features were placed on employees' accounts before Alltel owned the company and were authorized by the prior owner. Venis testified that Alltel then suspended Donna Cornelius pending further investigation to determine whether the prior owner had actually authorized the free features. Alltel Human Resources Manager Pam Remy testified that she then called two Alltel area managers: Don Holt in London and Bill Brown in Lexington, who confirmed that free features had been placed on phones by the prior owners. Thus, Alltel reinstated Cornelius.

During this investigation, Venis discovered that Miller removed the free features from her account after Misty Rambo complained about the free features. Venis did not discover any information indicating that Cornelius had modified her account. Alltel's investigation did not reveal that any employee, other than Kathy Miller, made changes to her own account or the account of a co-worker, friend or family member after Alltel became owner of the company.

The evidence showed that Alltel considered an employee's altering of an account without authorization to be a serious ethical violation. Venis testified that, prior to Miller's alteration of her account, Venis presented an ethics in the workplace seminar for all Alltel employees. One slide in the seminar explicitly stated "[e]mployees are <u>never</u> authorized to make changes or adjustments to their own accounts, or to the accounts of family/friends, or to co-worker accounts." (Defendant's Ex. 5). London facilities department supervisor Myrtie Joe Roberts testified that Alltel's policy against altering accounts was communicated to Alltel employees.

Karen Venis testified that Miller was terminated, not because she had free features on her phone and not because of any conduct that occurred prior to Alltel's ownership of the company. Instead, Venis testified, Miller was terminated because she accessed her own account and deleted the free features after learning of Misty Rambo's complaint. Pam Remy, who testified that she had no knowledge of Miller's sexual discrimination complaint, instructed Venis that, if Miller admitted to altering her account without authorization, Miller should be terminated. Venis testified that Miller admitted that she had removed the features and that she had done so without authorization. Venis testified that she then terminated Miller's employment.

Thus, Alltel presented evidence that it fired Miller because she altered her own account.

### 3) Evidence of Pretext.

The next issue in this action is whether Miller produced sufficient evidence that Alltel's stated reason for terminating her was simply a pretext for retaliation. There are

three ways in which a plaintiff can demonstrate pretext: first, by showing that the employer's stated reason for terminating the employee has no basis in fact; second, by showing that the reason offered for terminating the employee was not the actual reason; and third, by showing that the reason was insufficient to explain the employer's action. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)(citation and quotation omitted).

The first type of pretext showing consists of evidence that the proffered reason is factually false, i.e., that the facts alleged by the employer never happened. *Id.* Miller has at all times conceded that she altered her own account. Accordingly, this first type of pretext showing is inapplicable here.

With the second type of pretext showing, the plaintiff admits the factual basis of the employer's proffered reason and admits that the proffered reason *could* motivate the employer to act as he did. *Id*. The plaintiff charges however that discrimination was more likely the reason the employer acted the way he did. With this type of pretext showing, the plaintiff is required to produce additional evidence of retaliation beyond his prima facie evidence. *Id*

Miller produced no evidence of retaliation beyond her prima facie evidence. In fact, far from there being any evidence of Alltel's retaliatory intent, the sole evidence in the record indicated that, when Miller orally complained about Rick Barker's comments to Karen Venis, Venis took the complaint quite seriously. She asked Miller to fax a written complaint to her and went to London the following day to begin an investigation. Alltel ultimately disciplined Barker with a written warning.

The evidence also showed that Alltel did not target Miller for investigation. Alltel began the investigation of employees' phone records only after receiving a complaint from employee Misty Rambo that Donna Cornelius had free features on her personal phone. London facilities department supervisor Myrtie Joe Roberts testified that, after meeting with Rambo, he and Venis decided to check the phone accounts of all the employees of the facilities department. There is no evidence that Alltel would have begun any investigation of Miller's phone records or the records of any other employee had it not been for Rambo's complaint.

The third type of pretext showing – evidence that the proffered reason was insufficient to motivate the discharge – ordinarily consists of evidence that the proffered reason did not cause the employer to undertake the same employment action with respect to employees not in the protected class. This showing consists of evidence that employees who are not in the protected class were not subjected to the same treatment even though they engaged in substantially identical conduct. *Manzer*, 29 F.3d at 1084.

Miller has argued that the conduct of Donna Cornelius was substantially identical to Miller's conduct. Miller presented evidence that Donna Cornelius had accessed other employees' accounts and added free features on their phones when Rick Barker asked her to do so. Cornelius was only suspended for three days.

However, while Donna Cornelius testified that she had added free features to employee's lines at Rick Barker's request, she also testified that she had not done so anytime after Alltel took over the company in August 2002. There was no evidence that, during Alltel's ownership of the company, Cornelius had ever altered any employee's

account. Thus, Cornelius did not engage in the same behavior for which Miller was terminated – altering her own account.

In oral arguments on the Motion for Directed Verdict, Miller's counsel stated that there was evidence that Cornelius added features to Barker's account during Alltel's ownership of the company. Cornelius testified that, during Alltel's ownership of the company, when Barker moved his home residence, she moved his "off-premises" business extension from his old residence to his new residence and that she put features on this business extension at Barker's request. She testified that she had no written authorization to do this.

Don Holt, an area manager for Alltel, testified that an "off-premises" business extension is an Alltel business line that is not located on Alltel property and may be located at an employee's home. When a person dials the employee's business line, both the employee's office phone and the employee's off-premises business phone at his house rings. The off-premises line is designated for business only. Holt testified that he authorized Barker's off-premises business extension and that such an extension was standard procedure for managers on call. Holt testified that the off-premises phone comes with all the same features as the employee's business phone. Thus, Barker did not need permission to have the business-phone features added to his off-premises phone.

Thus, Cornelius's actions in transferring Barker's business extension from one residence to another and adding features to that extension is not conduct substantially identical to Miller's conduct. Miller altered her personal account without any authorization. There was a specific company policy prohibiting such conduct. Miller

10

testified that she was not aware of any other employee who accessed a personal account and made changes to it without authorization. Cornelius added features to an Alltel extension at the direction of Barker who had authority to make such a direction. Miller has failed to present any evidence that any employee engaged in conduct substantially identical to the conduct for which Alltel states it terminated Miller. Accordingly, she has failed to show that Alltel's proffered reason for terminating her was a pretext for retaliation.

### III.     CONCLUSION.

For the above reasons, the Court hereby ORDERS that:

1)     the Defendant's oral Motion for Judgment as a Matter of Law is GRANTED; and

2)     the Plaintiff's Motion for the Court to Take Judicial Notice of Internet Websites (Rec. No. 52) and all other pending motions are DENIED as moot.

Dated this 28th day of November, 2006.

**Signed By:**
*Karen K. Caldwell*  KKC
**United States District Judge**